IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CARLO MERILLO, III,          )
                             )
            Plaintiff,        )
                             )
      v.                     ) Civ. Action No. 11-333-GMS
                             )
CARL DANBERG, et al.,         )
                             )
            Defendants.       )

**MEMORANDUM**

The plaintiff, Carlo Merillo ("Merillo"), an inmate at the Sussex Correctional Institution

("SCI"), Georgetown, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 3.) He

appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. §

1915. (D.I. 6.) The court now proceeds to review and screen the complaint pursuant to 28

U.S.C. § 1915 and § 1915A.

**I. BACKGROUND**

Merillo was housed at the James T. Vaughn Correctional Center ("VCC") in Smyrna,

Delaware when he was assaulted by two unknown inmates on October 28, 2009. At the time, he

was assigned to Building 22, B-Tier, upper cell 10 ("22-B-U-10"). Following the attack, Merillo

requested protective custody and was escorted to administrative segregation. He remained in

protective custody until November 30, 2009, when he was told he was returning to 22-B-U-10.

Merillo told the defendant Michael Trader ("Trader") that he had been attacked while housed at

22-B-U-10, that a real threat existed there, and he tried to refuse to return to 22-B-U-10. Trader

---

[1]When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him
of a federal right, and that the person who caused the deprivation acted under color of state law.
*West v. Atkins,* 487 U.S. 42, 48 (1988).

told Merillo that his hands were tied and the move was ordered by the defendant Major Scarborough ("Scarborough").

Upon his return to Unit No. 22, Merillo demanded to speak to the lieutenant in charge. The lieutenant in charge was the defendant David Benson ("Benson"). Merillo explained to Benson that he had been assaulted in October, that he had sought protective custody, he was afraid to return to 22-B-U-10, there existed a real threat to him at 22-B-U-10, and he was forced from protective custody against his will. Benson agreed it was not safe to house Merillo at 22-B-U-10 but, when Benson called to move Merillo to a different location, the captain he spoke to indicated that he could not over-ride a move ordered by the major. Benson wrote up an incident report to document what happened, to "cover [his] ass," and indicated that he would email his co-workers and superiors so they would be aware of the situation.

Merillo was returned to 22-B-U-10. He submitted a grievance on December 1, 2009, and requested a return to protective custody. On December 3, 2009, Merillo was attacked by two unknown inmates. Plaintiff sustained cuts to his face and arm, was escorted to medical, and admitted to the infirmary. Plaintiff was transferred to the SCI ten days after the assault. He seeks compensatory and punitive damages.

## II. STANDARD OF REVIEW

This court must dismiss, at the earliest practicable time, certain *in forma pauperis* and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The

court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Merillo proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Merillo leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, __U.S.__, 129 S.Ct. 1937 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The assumption of truth is inapplicable to legal conclusions or to "[t]hreadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Id.* at 1949. When determining whether dismissal is appropriate, the court conducts a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the factual and legal elements of a claim are separated. *Id.* The court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* at 210-11. Second, the court must determine whether the facts alleged in the complaint are sufficient to show that Merillo has a "plausible claim for relief."[2] *Id.* at 211. In other words, the complaint must do more than allege Merillo's entitlement to relief; rather it must "show" such an entitlement with its facts. *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Iqbal*,129 S.Ct. at 1949 (quoting Fed. R. Civ. P. 8(a)(2)).

## III. DISCUSSION

Merillo has named Phelps and Commissioner Carl Danberg ("Danberg") as defendants based upon their supervisory positions. The complaint states that Phelps is the warden of the VCC and is legally responsible for the operation of the facility and for the welfare of its inmates.

---

[2]A claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*

It similarly states that Danberg is the commissioner and is legally responsible for the overall operation of the Delaware Department of Correction and each institution under its jurisdiction, including the VCC.

A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). The Third Circuit has reiterated that a § 1983 claim cannot be premised upon a theory of respondeat superior and, that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant. *Brito v. United States Dep't of Justice*, 392 F. App'x 11, 14 (3d Cir. 2010) (not published) (citing *Iqbal*, 129 S.Ct. at 1948-49*); Rode v. Dellarciprete*, 845 F.2d at 1207).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S.Ct. at 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal,* 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own

conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (10th Cir.

2010), *cert. denied*, __U.S.__, 131 S.Ct. 2150 (2011) (quoting *Iqbal* 129 S.Ct. at 1949). The

factors necessary to establish a § 1983 violation will vary with the constitutional provision at

issue. *Id.*

      Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory

liability," one under which supervisors can be liable if they "established and maintained a policy,

practice or custom which directly caused [the] constitutional harm," and another under which

they can be liable if they "participated in violating plaintiff's rights, directed others to violate

them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates'

violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quoting *A.M.

ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)) (second

alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's

directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus

or affirmative link between the directions and the specific deprivation of constitutional rights at

issue. " *Id.* at 130.

      The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the

standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether

*Iqbal* requires narrowing of the scope of the test. *Santiago*, 629 F.3d at 130 n.8; *see, e.g.,

Argueta v. United States Immigration and Customs Enforcement*, 643 F.3d 60 (3d Cir. 2011)

("To date, we have refrained from answering the question of whether *Iqbal* eliminated – or at

least narrowed the scope of – supervisory liability because it was ultimately unnecessary to do so

in order to dispose of the appeal then before us."); *Bayer v. Monroe County Children and Youth*

*Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of

personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a

supervisory official.). Hence, it appears that, under a supervisory theory of liability, and even in

light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing

liability for the violation of a plaintiff's constitutional right.[3] *Williams v. Lackawanna County*

*Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. 2010).

      Facts showing personal involvement of the defendant must be asserted; such assertions

may be made through allegations of specific facts showing that a defendant expressly directed the

deprivation of a plaintiff's constitutional rights or created such policies where the subordinates

had no discretion in applying the policies in a fashion other than the one which actually produced

the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing

that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff.

*See Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal*, 129 S.Ct. at 1949-

54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for*

*Women*, 128 F. App'x 240 (3d Cir. 2005) (not published).

      Merillo provides no specific facts how Phelps or Danberg violated his constitutional

rights, that they expressly directed the deprivation of his constitutional rights, or that they created

policies wherein subordinates had no discretion in applying them in a fashion other than the one

---

[3]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

which actually produced the alleged deprivation. Therefore, the court will dismiss as frivolous the claims against Phelps and Danberg pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

## IV. MOTIONS

### A. Request for Counsel

Merillo seeks counsel on the grounds that he is unable to afford counsel, his imprisonment will greatly limit his ability to litigate, the issues are complex and will require significant research and investigation, he has limited access to the law library, the trial will likely involve conflicting testimony and counsel would enable him to present evidence and cross-examine witnesses, and he has made repeated, unsuccessful attempts to obtain counsel. (D.I. 4.)

A *pro se* litigant proceeding in forma pauperis has no constitutional or statutory right to representation by counsel. *See Ray v. Robinson*, 640 F.2d 474, 477 (3d Cir. 1981); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). It is within the court's discretion to seek representation by counsel for plaintiff, and this effort is made only "upon a showing of special circumstances indicating the likelihood of substantial prejudice to [plaintiff] resulting . . . from [plaintiff's] probable inability without such assistance to present the facts and legal issues to the court in a complex but arguably meritorious case." *Smith-Bey v. Petsock,* 741 F.2d 22, 26 (3d Cir. 1984); *accord Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law).

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel, including:

(1) the plaintiff's ability to present his or her own case;

(2) the difficulty of the particular legal issues; (3) the degree
to which factual investigation will be necessary and the ability
of the plaintiff to pursue investigation; (4) the plaintiff's capacity
to retain counsel on his own behalf; (5) the extent to which a
case is likely to turn on credibility determinations; and
(6) whether the case will require testimony from expert witnesses.

*Tabron*, 6 F.3d at 155-57; *accord Parham*, 126 F.3d at 457; *Montgomery v. Pinchak*, 294 F.3d
492, 499 (3d Cir. 2002).

To date, Merillo has shown that he possesses the ability to adequately pursue his claims.
In addition, this case is in its early stages and, should the need for counsel arise later, one can be
appointed at that time. Upon consideration of the record, the court is not persuaded that
appointment of counsel is warranted at this time. Accordingly, Merillo's request for counsel will
be denied without prejudice to renew. (D.I. 4.)

### B. Motion to Amend

Merillo moves to amend "the defendants, capacity in which they are being sued, claims
for relief, and prayer for relief." (D.I. 8.) Pursuant to Fed. R. Civ. P. 15(a), a party may amend
its pleading once as a matter of course within twenty-one days after serving it or, if the pleading
is one to which a responsive pleading is required, twenty-one days after service of a responsive
pleading or twenty-one days after service of a Rule 12(b), whichever is earlier. Otherwise, a
party may amend its pleading only with the opposing party's written consent or the court's leave.

Merillo's motion generally indicates the areas he wishes to amend. However, the court
cannot discern from his motion whether his attempt at amendment will be successful since he did
not provide the court a copy of his proposed amended complaint. Therefore, the court will deny
without prejudice to renew the motion to amend. (D.I. 8.)

## V. CONCLUSION

For the above reasons, the claims against Phelps and Danberg will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Merillo may proceed with his claims against Scarborough, Trader, and Benson. The court will deny without prejudice to renew Merillo's request for counsel and motion for leave to amend the complaint. (D.I. 4, 8.)

An appropriate order will be entered.

CHIEF, UNITED STATES DISTRICT JUDGE

, 2011
Wilmington, Delaware